# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARY S. STOTMEISTER, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 05-0813 (RBW) |
| v. | ) | |
| CHERRY HILL CONSTRUCTION, INC., et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiffs filed this action in this Court against the defendants Cherry Hill Construction, Inc. ("Cherry Hill"), Alion Science & Technology Corp. ("Alion"), M&M Welding & Fabricators, Inc. ("M&M"), and the United States of America for the alleged wrongful death of their husband and father, Francis Stotmeister. The decedent died from injuries sustained on April 23, 2004, caused by a steam and water burst that occurred at the construction site where he was employed. First Amended Complaint ("Am. Compl.") ¶¶ 13, 14, 35, 41. This action includes a claim against defendant United States under the Federal Tort Claims Act, 28 U.S.C. § 1325 (2000) ("FTCA"). Prior to serving the Original Complaint, the plaintiffs filed and served an amended complaint seeking judgment, jointly and severally, against the same defendants. M&M filed cross-claims against each of the other defendants in this matter for indemnification and contribution. Currently before the Court is Defendant United States of America's Motion to Dismiss ("Def.'s Mot.") all claims filed against it[1] pursuant to Rule 12(b)(1) of the Federal Rules

---

[1] The plaintiffs' Amended Complaint includes six counts against defendant United States for negligence, wrongful death action pursuant to D.C. Code § 16-2701-2703 (2006), a District of Columbia survival action pursuant

(continued...)

of Civil Procedure.[2]  For the reasons set forth below, the United States' motion is denied.

## I.   Background

The plaintiffs in this case are Mary Stotmeister, Mark Stotmeister, and Danielle Stotmeister (Stotmeisters), who are all seeking to recover damages for the death of Francis Stotmeister.  Mary Stotmeister was the decedent's wife, and is now the personal representative of his estate.  Am. Compl. ¶ 4.  Danielle Stotmeister is the daughter of the decedent, id. ¶ 7, and Mark Stotmeister is the decedent's minor son.  Id. ¶ 6.  As noted above, on April 23, 2004, the decedent sustained fatal burns at a construction site at or near 808 17th Street, N.W., in Washington D.C.  Id. ¶¶ 35, 41.  At the time of the accident, the decedent was working as an employee of Grunley-Walsh Joint Venture LLC ("Grunley-Walsh").  Id. ¶ 13.

The Heating and Transmission Division of the United States General Services Administration ("GSA"), National Capital Region, contracted with Grunley-Walsh to replace high pressure steam and condensate lines under 17th Street N.W., Washington D.C.  United States' Mem., Exhibit ("Ex.") 1 at 8 (Technical Specification for Project to Replace 17th Street Condensate Line).  Work related to this contract was occurring during the early morning of April 23, 2004, when the release of steam and condensate water caused the injuries that ultimately resulted in the death of the decedent and Cherry Hill Superintendent Joseph Hudert, who were both in or near manhole 11 on 17th Street at the time of the release.  Stotmeisters' Opp'n, Ex. A

---

[1](...continued)
to D.C. Code § 12-101 (2006), a loss of parental guidance action alleged by Danielle Elizabeth Stotmeister, and a loss of parental guidance action alleged by Mark Stotmeister.  The complaint also included a Virginia wrongful death action pursuant to Va. Code. Ann. § 8.01-50-56 (2006), but the claim was dismissed by agreement of the parties.

[2]Also before the Court are Defendant United States of America's Memorandum in Support of Motion to Dismiss ("United States' Mem.") and the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant United States of America's Motion to Dismiss ("Stotmeisters' Opp'n").

at 12 (Accident Investigation Report). Consequently, the GSA launched an accident investigation to determine what had caused the release of the steam. Stotmeisters' Opp'n at 4. The GSA Accident Review Board interviewed witnesses, reviewed safety procedures for the project, examined photographs and visited the accident site to determine the cause of the accident. Id. at 7. According to the report issued by the Accident Review Board, the project task for the night of April 22-23, 2004, was to install a new steam line. Id. at 9. That night, after the District of Columbia Water and Sewage Authority ("WASA") had shut off the water to the existing line, the Cherry Hill crew cut into the line so that they could connect the new line to the existing system. Id. at 10. When they did so, residual water in the isolated pipe segment drained out and came into contact with other uninsulated steam lines under 17th Street. Id. Although Cherry Hill had set up pumps to remove this residual water, it nonetheless came into contact with hot, uninsulated pipes resulting in the creation of large amounts of steam. Id. This caused the lines around the work site to violently vibrate, or "hammer". Id. This hammering also affected lines in the nearby New Executive Office Building ("NEOB"), where water and steam began to collect in a mechanical room. Id. GSA plumbers responded to the NEOB emergency and closed another isolation valve on the steam lines in order to replace a gasket damaged by the hammering. Id. at 10-11. At one point, the hammering in the NEOB "was so violent that the GSA Service Center Plumbing Shop personnel fled the mechanical room." Id. at 11.

     Eventually, the steam and hammering was contained in the NEOB and Cherry Hill was able to complete the installation of the new line on 17th Street. Id. After repairs were made at the NEOB, GSA plumbers opened an isolation valve connected to the steam station. Id. The WASA inspected the newly installed line on the outside of the NEOB and approved Cherry

Hill's work.  Id.  Somewhere between 7:30 a.m. and 8:00 a.m. on April 23, 2004, a GSA plumber closed an isolation valve between the NEOB and manhole 11 on 17th Street in preparation for the reopening of the steam valve in manhole 11.  Id. at 12.  At approximately 8:51 a.m., before the WASA released the water into the 17th Street line, "there was a massive release of steam and condensate water."  Id.  It is suspected that the welding on a valve inside the manhole failed under the pressure of a very high velocity burst of steam, pushing a condensate slug through the system.  Id. at 15.  At the time this occurred, a large amount of steam and water were released. Id.  "Mr. Hudert was standing on [a] ladder inside the manhole [and] the [burst] of water and steam ejected him out of the manhole into the air [causing him to fall onto] the roadway.  Mr. Stotmeister either was [also] pushed out of the manhole by the erupting steam and water or climbed out [and rolled] away from the hole."  Id. at 12.

   Although the entire "Findings and Recommendations" section of the Accident Review Board's report is redacted, the conclusion section states that the Board found that the accident had been caused by Grunley-Walsh's failure to comply with the project's safety procedures.  Id. at 27.  Specifically, the Accident Review Board determined that Grunley-Walsh had failed to comply with safety precautions contained in the terms and protocols of its contract and communicated to it orally, which required Grunley-Walsh to request that the GSA shut down and drain the lines from which steam and water were released before the valve in manhole 11 was opened.  Id.  The Board based this conclusion, in part, on the inference that because the steam valve in manhole 11 was found open after the accident, Mr. Stotmeister, a Grunley-Walsh employee, must have opened it minutes before the accident occurred.  Id. at 15.

## II.   Standard of Review

A motion for dismissal under "Rule 12(b)(1) [of the Federal Rules of Civil Procedure] presents a threshold challenge to the court's jurisdiction . . . ." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (citations omitted).  Specifically, Rule 12(b)(1) permits dismissal of a complaint if the court "lack[s] . . . jurisdiction over the subject matter[.]"  Fed. R. Civ. P. 12(b)(1).  The "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Am. Farm Bureau v. EPA, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).  This rule also imposes "an affirmative obligation [on the Court] to ensure that it is acting within the scope of its jurisdictional authority . . . [and for this] reason, the '[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion for failure to state a claim." Fowler v. D.C., 122 F. Supp. 2d 37, 40 (D.D.C. 2000) (citation omitted).  This court is therefore permitted to rely on documents beyond the pleadings to assure that it has jurisdiction.  See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Haase, 835 F.2d at 901; Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).  And considering documents outside the pleadings to resolve a challenge to the Court's subject matter jurisdiction, the Court does not convert the motion into one for summary judgment, as "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment." Haase, 835 F.2d at 905 (emphasis on original).  However, just because the Court has the power to go beyond the pleadings, it remains "settled law [that] the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone." Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.  Analysis

As indicated, in the motion now before the Court, the United States seeks dismissal of the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  As grounds for its motion, the United States opines that it is immune from liability in this tort action because of its sovereign status.  United States' Mem. at 7.  The government acknowledges that "by it own terms, the FTCA, 28 U.S.C. § 1325(b) (2000), waives [its] sovereign immunity . . . ," but it contends that this waiver only encompasses "claims resulting from the negligent conduct or wrongful omissions of federal agencies or 'employees of the government'" (citing 28 U.S.C. §§ 1346(b), 2671 (2000)), not government contractors.  United States' Mem. at 7.  And the government contends that Mr. Stotmeister, acting as a Superintendent for Grunley-Walsh (a government contractor), caused the event that resulted in the decedent's death.  Id. at 10.  Thus, in the government's opinion, because the alleged tort occurred as a result of a contractor's actions, the FTCA's waiver provisions do not apply and it therefore cannot be held liable for the decedent's fatal injuries in this action.  Id. at 7-10.

The Stotmeisters oppose the government's motion in all respects.  Specifically, the Stotmeisters take exception with the United States' claim of sovereign immunity, arguing that their claim against the United States specifically alleges direct negligence on the part of the government, which it contends contributed to the steam and water release that caused the decedent's death.  Stotmeisters' Opp'n at 11-12.  The Stotmeisters contend that the "[g]overnment's [alleged] negligence in failing to detect, warn of, or repair the dangerous condition in critical elements of its steam system - namely, the malfunctioning emergency shutoff valve in the NEOB steam room and the defective drip leg plate in Manhole 11 - proximately

caused Frank Stotmeister's death." Id. at 15. The Stotmeisters also argue that the government is directly liable for its own negligence with respect to supervising the work of its contractors. Stotmeisters' Opp'n at 15-16.

While federal courts have original jurisdiction to hear claims against the United States, subject matter jurisdiction to sue the United States only exists when the United States has waived its sovereign immunity. United States v. Orleans, 425 U.S. 807, 814 (1976). Here, the Stotmeisters argue that this Court has subject matter jurisdiction over its claims against the government pursuant to an express waiver made by Congress in the FTCA. Stotmeisters' Opp'n at 11. The FTCA confers upon

> the district courts . . . exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Supreme Court has held that this language in "[t]he [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." Orleans, 425 U.S. at 813. The FTCA defines federal employees to include "officers or employees of any federal agency." 28 U.S.C. § 2671. "[T]he term 'Federal agency' includes the executive departments, . . . independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." Id. Moreover, the Supreme Court has interpreted the language of the FTCA "to

7

mean . . . that the United States waives sovereign immunity 'under circumstances' where local law would make a '<u>private person</u>' liable in tort." <u>United States v. Olson</u>, __ U.S.__, __, 126 S. Ct. 510, 511 (2005) (emphasis added).  Thus, the question for this Court to resolve is whether the Stotmeisters have asserted a claim against the United States that would be the basis for finding tort liability in the District of Columbia against a private individual.  <u>See</u> <u>Id.</u>

      The Stotmeisters' negligence claim against the United States is based on the theory of joint and several liability, Stotmeisters' Opp'n at 12 , a tort doctrine, Restatement (third) of Torts § 10 (2000) ("[w]hen, under applicable law, some persons are jointly and severally liable to an injured person, the injured person may sue for and recover the full amount of recoverable damages from any jointly and severally liable person.").  A negligence claim alleging joint and several liability of the United States is actionable under the FTCA if the claim would be applicable against a private individual under applicable state law.  28 U.S.C. § 1346(b)(1).  In other words, the United States is answerable in damages if its alleged negligence proximately caused Mr. Stomeister's death, although the negligence of others may have contributed to causing the accident.  <u>See</u> <u>Hill v. McDonald</u>, 442 A.2d 133, 137 (D.C. 1982) ("[t]he law does not recognize a single proximate cause of every injury.  There may be several causes concurring to produce the harm.  Two persons whose concurrent negligence causes injury to a third are liable jointly and severally. . . .") (citations omitted); Becker v. Colonial Parking, Inc., 409 F.2d 1130, 1137 (D.C. Cir. 1969) ("'one cannot escape the consequences of his own negligence merely because  another person, with whom he has no connection or over

whom he has no control, may have contributed to the injury by his wrongful or negligent act.'") (quoting Metropolitan R.R. v. Jones, 1 App. D.C. 200, 205 (1893)).

The substantive law that governs in an FTCA action is that of the state where the act or omission occurred.  28 U.S.C. § 1346(b)(1); accord Richards v. United States, 369 U.S. 1, 9 (1962) ("Where the negligence and the injury normally occur simultaneously and in a single jurisdiction, the law to be applied is clear, and no solution to the meaning of the words 'the law of the place where the act or omission occurred' is required."). Here, as all the acts and omissions alleged in the Stotmeisters' complaint occurred in the District of Columbia, as did the injuries sustained by the decedent and the events that allegedly caused them, it is the substantive law of the District of Columbia that this Court must apply.  Id.

The Stotmeisters "charge the Government with negligence in, among other things, failing to detect, warn of, or correct a dangerous condition, and failing to inspect, install, repair, monitor, or maintain critical elements of the steam system." Stotmesiters' Opp'n at 11.  Negligence of this sort is actionable under District of Columbia law.  See e.g., Sandoe v. Lefta Assocs., 559 A.2d 732, 738, 744 (D.C. 1989) (holding that landowners must exercise due care under the circumstances, which amounts to reasonable supervision and inspection of the premises to identify and protect against potential perils).

With respect to its motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Fed. R. Civ. P., the United States, has, in major part, misconstrued the nature of the Stotmeisters' complaint.  The United States first argues that because the FTCA expressly forbids a finding of liability against it for the action of a contractor, the

9

Amended Complaint fails to confer subject matter jurisdiction to this Court over the Stotmeisters' claims because there has been no waiver of the United States' sovereign immunity.  United States' Mot. at 1-2; see 28 U.S.C. §§ 1346(b), 2671 (precluding any shift of liability resulting from the conduct of a contractor to the United States). However, the Stotmeisters seek to recover only that portion of the damages resulting from the United States' (GSA's) employees' conduct.  Stotmeisters' Opp'n at 1.  The United States does not address the plaintiffs' assertion that government employees, themselves, were negligent.  While the FTCA does not authorize the United States to assume the liability for the acts of its contractors, it does waive the United States' immunity from suit resulting from the acts of its employees and agencies working on behalf of the United States.  See 28 U.S.C. §§ 1346(b), 2671; cf. Louge v. United States, 412 U.S. 521, 532-33 (1973) (holding that the federal government could not be held liable for the actions of a county sheriff's employees in the death of a federal prisoner because no agency relationship existed, but remanded the case to the Court of Appeals on question of whether a Deputy United States Marshal, an employee of the federal government, negligently caused the death of that federal prisoner in a county jail.)

And here, the Stotmeisters point to the GSA's actions identified in the GSA accident report which allegedly indicates that the GSA played an active role in the events that contributed to the occurrence which caused the decedent's death.  Stotmeisters' Opp'n at 11; see also Stotmeisters' Opp'n, Ex. 1 at 14-15.  Therefore, this alleged active negligence, if proven by the Stotmeisters, would be sufficient to support their negligence claim under District of Columbia law.  See Sandoe, 559 A.2d at 738, 744 ("In the District

of Columbia the applicable standard [of care] . . . an owner or occupier of land [must] exercise[] to a person lawfully upon his premises is reasonable care under all of the circumstances . . . [which] may include a duty to inspect the premises for latent, dangerous defects.")

The United States characterizes the plaintiffs' position as to its liability as an "attempt to 'artfully plead' around the jurisdictional hurdle to holding the United States liable." United States' Mem. at 1. However, this argument is inapplicable because the real question is whether the government is liable for its own negligence. The United States relies on an opinion by another member of this Court, Presley v. Commercial Moving & Rigging, Inc., No. 04-0014 (D.D.C. Mar. 29, 2005), for the proposition that any attempt by the plaintiffs to avoid the contractor's exemption to the FTCA's sovereign immunity waiver must fail. Def.'s Mot. at 1. However, Presley is distinguishable from the present case. In Presley, the plaintiffs unsuccessfully argued that the government, as a special use permit-holder, retained a duty to ensure contractor compliance with Occupational Safety and Health regulations. Id. at 12. The plaintiffs in Presley relied on a far-fetched interpretation of the language of this special use permit, issued by the National Park Service to the Department of State, as the basis for finding that a federal agency owed them a duty of care. See Presley, No. 04-0014.

Conversely, the Stotmeisters point to an undisputed duty owed to them by the government, as owner and operator of the steam system in question, to inspect these premises for latent, dangerous defects through the exercise of reasonable care under the circumstances. Stotmeisters' Opp'n at 11; see Sandoe, 559 A.2d at 744. Accordingly,

of Columbia the applicable standard [of care] . . . an owner or occupier of land [must] exercise[] to a person lawfully upon his premises is reasonable care under all of the circumstances . . . [which] may include a duty to inspect the premises for latent, dangerous defects.")

The United States characterizes the plaintiffs' position as to its liability as an "attempt to 'artfully plead' around the jurisdictional hurdle to holding the United States liable." United States' Mem. at 1. However, this argument is inapplicable because the real question is whether the government is liable for its own negligence. The United States relies on an opinion by another member of this Court, Presley v. Commercial Moving & Rigging, Inc., No. 04-0014 (D.D.C. Mar. 29, 2005), for the proposition that any attempt by the plaintiffs to avoid the contractor's exemption to the FTCA's sovereign immunity waiver must fail. Def.'s Mot. at 1. However, Presley is distinguishable from the present case. In Presley, the plaintiffs unsuccessfully argued that the government, as a special use permit-holder, retained a duty to ensure contractor compliance with Occupational Safety and Health regulations. Id. at 12. The plaintiffs in Presley relied on a far-fetched interpretation of the language of this special use permit, issued by the National Park Service to the Department of State, as the basis for finding that a federal agency owed them a duty of care. See Presley, No. 04-0014.

Conversely, the Stotmeisters point to an undisputed duty owed to them by the government, as owner and operator of the steam system in question, to inspect these premises for latent, dangerous defects through the exercise of reasonable care under the circumstances. Stotmeisters' Opp'n at 11; see Sandoe, 559 A.2d at 744. Accordingly,

because the Stotmeisters have asserted a proper negligence claim based on the alleged acts or omissions of a federal agency's employees, the United States has waived its sovereign immunity through the FTCA with respect to these allegations and, thus, this Court has subject matter jurisdiction in this case. Olson, ___ at ___, 126 S. Ct. at 511; 28 U.S.C. §§ 1346(b), 2671.

### V.   Conclusion

For the foregoing reasons, the Stotmeisters' negligence claim survives the United States' dismissal motion. Accordingly, the United States' Rule 12(b)(1) motion is denied.

SO ORDERED this 7th day of July 2006.[3]

> REGGIE B. WALTON
> United States District Judge

---

[3] An order consistent with this Memorandum Opinion is being issued contemporaneously herewith.